UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KENNETH ROBERTS | CIVIL ACTION |
| VERSUS | NO. 14-1929 |
| INLAND SALVAGE, INC. | SECTION A (4) |

## ORDER AND REASONS

Before the Court is a **Motion for Partial Summary Judgment Regarding Punitive Damages (Rec. Doc. 106)** filed by Defendants: Hiscox Dedicated Corporate Member Limited and Catlin Syndicate Limited Subscribing to Covernote NO4MM-34-1049-03, and Chubb Syndicate 1882 (hereinafter collectively referred to as "Defendants"). Plaintiff Kenneth Roberts ("Roberts") opposes this motion (Rec. Doc. 110) and Defendants have replied. (Rec. Doc. 113). The motion, set for submission on November 29, 2017, is before the Court on the briefs without oral argument.[1] This matter is set as a jury trial beginning on May 14, 2018 at 8:30 a.m. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the Defendants' motion should be **GRANTED** for the reasons set forth below.

**I.    Background**

Defendants bring this motion contending that Roberts's punitive damages claims must be dismissed in accordance with the Defendants' respective insurance policies. (Rec. Doc. 106). In his Complaint, Roberts asserts claims for negligence under the Jones Act (46 U.S.C. § 30104) and under general maritime law, as well as claims for unseaworthiness and maintenance and cure. (Rec. Doc. 1). Roberts additionally asserts claims seeking punitive damages based on the general

---

[1] Defendants have requested oral argument, but the Court is not persuaded oral argument would be helpful.

maritime law. *Id.* at p. 4, ¶ XI. According to his Complaint, Roberts's punitive damages claim "relates not only to any arbitrary and/or unreasonable failure of defendant to pay maintenance and cure benefits but also for any gross negligence of the defendant, or unseaworthiness of the vessel as may be allowed under General Maritime Law." *Id.*

This matter arises from a maritime personal injury action. Roberts contends that on November 22, 2013 he experienced an accident resulting in serious injuries while employed by Inland Salvage, Inc. ("Inland Salvage"). (Rec. Doc. 1, p. 2, ¶ 5). On August 22, 2014, Roberts filed a Seaman's Complaint for Damages against Inland Salvage. (Rec. Doc. 1). However, Inland Salvage filed for Chapter 11 Bankruptcy prior to Roberts filing his Complaint. (Rec. Doc. 19-1, p. 1). Roberts was then precluded from maintaining an action against Inland Salvage due to the automatic stay on actions against Inland Salvage during bankruptcy proceedings.[2] (Rec. Doc. 13, pp. 1–2).

Thereafter, on June 10, 2016, Roberts filed a First Supplemental and Amended Complaint, directly naming the following entities as defendants: American Equity Underwriters, Inc.; Castlepoint National Insurance Company; and Underwriters at Lloyd's, London Chubb Syndicate 1882 ("Chubb"). (Rec. Doc. 21, pp. 1–2, ¶¶ 13–15). Roberts did so in accordance with Louisiana's Direct Action Statute (La. R.S. § 22:1269), which allows him to maintain this action directly against the insurer-defendants. *Id.* at pp. 1–2, ¶¶ 17–18. Roberts again amended his complaint to add Hiscox Dedicated Corporate Member Limited and Catlin Syndicate Limited Subscribing to Covernote NO4MM-34-1049-03 as direct defendants (hereinafter referred to as "Hiscox"). (Rec. Doc. 93). Defendants Hiscox and Chubb bring the instant motion for partial summary judgment.

---

[2] Roberts dismissed Inland Salvage from this suit on November 2, 2017, leaving only insurer-defendants. (Rec. Doc. 105).

## II. Legal Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249–50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255).

Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

## III. Law and Analysis

Defendants bring the instant motion seeking to dismiss Plaintiff's claims for punitive damages on the grounds that neither of Defendants' insurance agreements with Inland Salvage provide coverage for punitive damages. On the other hand, Plaintiff argues that the language of the agreements does not specifically preclude Defendants from being assessed punitive damages.

Defendant Hiscox provided primary coverage to Inland Salvage and Defendant Chubb provided excess coverage. Hiscox issued its Covernote NO4MM-34-1049-03 (the "Covernote") to Inland Salvage providing Primary Maritime Employers' Liability Insurance for the period of April 18, 2013 to April 18, 2014. (Rec. Doc. 95-1, p. 2). The second policy at issue is the Slip (the "Chubb Slip") issued by Defendant Chubb Syndicate 1882 to Inland Salvage. The Chubb Slip provided Excess Marine Employers' Liability coverage to Inland Salvage from July 26, 2013 to July 26, 2014. (Rec. Doc. 106-2, Ex. A).[3] The Chubb Slip provides 50% of excess liability coverage above the underlying primary insurance contract—in this case, the Hiscox Covernote.

In analyzing the instant motion, the most noteworthy feature of the Chubb Slip is that the scope of its coverage mirrors that of the Covernote's scope of coverage. Under Section B of the Chubb Slip, the following conditions apply:

**Section B)**

All terms, clauses and conditions as per Underlying Insurance Contract NO4MM-34-1049-03 and to follow in all respects. . . .

(Rec. Doc. 106-2, Ex. A, p. 2). Thus, the issue of whether the Chubb Slip provides excess coverage for punitive damages will directly depend on this Court's determination of whether Hiscox's Covernote provides primary coverage for punitive damages. As a result, the Court's analysis of the Covernote's scope of coverage applies to the Chubb Slip as well.

Before getting to the crux of the parties' arguments, the Court notes that the insurance agreements at issue are contracts of marine insurance. In determining the applicable law governing the interpretation of the policies at issue, the Court's analysis begins with *Wilburn Boat Co. v.*

---

[3] Neither the Covernote coverage period nor the Chubb Slip coverage period is contested. The date of the alleged accident is November 22, 2013. Therefore, the Court finds that there is no issue as to the fact that both the Covernote and Chubb Slip provided coverage to Inland Salvage at the time of the alleged accident. The issue before the Court is whether the insurance policies provided coverage to Inland Salvage for punitive damages.

*Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955).[4]  *Taylor v. Lloyd's Underwriters of London*, 972 F.2d 666, 668 (5th Cir. 1992).  In *Wilburn Boat*, the Supreme Court determined that there was no federal admiralty rule regarding the breach of warranties in marine insurance policies. *Wilburn Boat,* 348 U.S. 310.  The Supreme Court refused to fashion such a rule, and instead, decided to apply state law. *Id.* at 315–16.  The Fifth Circuit, in addressing maritime cases, has interpreted *Wilburn Boat* to require "the application of state insurance law principles if there is no specific and controlling federal rule." *Truehart v. Blandon*, 884 F.2d 223, 226 (5th Cir. 1989), *citing Transco Exploration Co. v. Pacific Employers Ins. Co.*, 869 F.2d 862, 863 (5th Cir. 1989).  Said another way, "the interpretation of a contract of marine insurance is—in the absence of a specific and controlling federal rule—to be determined by reference to [the] appropriate state law." *Ingersoll-Rand Financial Corp. v. Employers Ins. of Wausau*, 771 F.2d 910, 911–912 (5th Cir. 1985), *cert. denied*, 475 U.S. 1046 (1986), *citing Wilburn Boat, supra*.

Defendants have not presented this Court with any authority citing a federal rule to apply in this case and provide only the conclusory statement, "[t]here being no controlling federal rule of contract interpretation, the court should apply Louisiana law." (Rec. Doc. 106, p. 3).  Moreover, Plaintiff provides no authority seeking to guide this Court to a controlling federal rule applicable to the current issue.  However, the Court finds that the Fifth Circuit's decision in *Taylor v. Lloyd's Underwriters of London* provides the Court with the proper guidance in resolving this dispute. 972 F.2d 666 (5th Cir. 1992).  In *Taylor*, the Fifth Circuit held that since there is no specific and controlling federal rule disallowing recovery of punitive damages against an insurance company, the issue should be determined by the law of the state with the greatest interest. 972 F.2d 666; *see*

---

[4] Because the language of both the Hiscox Covernote and the Chubb Slip provides coverage against certain maritime risks and losses, the policies provide maritime insurance within the meaning of *Wilburn Boat*.  *See Truehart v. Blandon*, 884 F.2d 223, 226 (5th Cir. 1989) (Because the "policy insures against certain maritime risks and losses . . . we conclude that it provides maritime insurance within the meaning of *Wilburn Boat*. . . .").

*also* Frank L. Maraist, Thomas C. Galligan, Catherine M. Maraist, & Dean A. Sutherland, *Cases and Materials on Maritime Law* 846 (3rd ed. 2016).

The motion currently before the Court does not reach the general legal issue asking whether punitive damages can be recovered against an insurance company. Rather, the issue before the Court is whether the language in Defendants' specific insurance policies provides for the coverage of punitive damages. Defendants argue that—being a contractual interpretation issue—the insurance policies must be interpreted according to Louisiana law. (Rec. Doc. 106, p. 4). Moreover, Plaintiff provides no authority on the applicable law nor does Plaintiff disagree that the policies at issue should be interpreted according to Louisiana law. Within the pleadings before the Court, the Court finds no reason why Louisiana law should not be applied to interpret the insurance policies. Moreover, the Court agrees with Defendants' argument that the interpretation of the insurance policies is a question of law and therefore appropriate for summary judgment. *Id.* (*citing Snelling & Snelling, Inc. v. Federal Ins. Co.*, 205 F.App'x 199, 201 (5th Cir. 2006)).

In interpreting the policies at issue, the Court is guided by certain principles of contractual interpretation.[5] Chapter 13 of the Louisiana Civil Code addresses "Interpretation of Contracts," and provides article 2045 as a starting point for interpreting contracts. Article 2045 states, "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. However, article 2046 provides, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. Applying these articles to insurance contracts, the Louisiana Supreme Court has held that if the language in an insurance contract is clear and

---

[5] An insurance policy is a contract under the law, and rules established for the interpretation of agreements are applicable thereto. *Albritton v. Fireman's Fund Ins. Co.*, 70 So.2d 111, 113 (La. 1953).

unambiguous, the agreement must be enforced as written. *Central Louisiana Elec. Co., Inc. v. Westinghouse Elec. Corp.*, 579 So.2d 981, 985 (La. 1991).

Defendants argue that the "Coverage" section of the Hiscox Covernote does not include coverage for punitive damages. Additionally, Defendants argue that the Covernote undoubtedly excludes coverage for punitive damages in the "Exclusions" section of the Covernote. On the other hand, Plaintiff contends that Defendants' policies do not preclude the recovery of punitive damages for Inland Salvage's failure to pay maintenance and cure. Plaintiff also argues that Defendants themselves are directly liable for punitive damages due to their own failure to pay Plaintiff maintenance and cure.

A. The Covernote's "Coverage" Clause

The Covernote includes a "Coverage" clause, which outlines the scope of coverage provided by Hiscox to the insured—Inland Salvage. (Rec. Doc. 95-1, p. 3). The "Coverage" clause states, in relevant part:

> We hereby agree, subject to the terms and conditions and the combined single limit, deductible and exclusions hereinafter mentioned, to pay all sums which You become legally obligated to pay, as employer, for compensatory damages under 46 U.S.C. § 688 (the so-called "Jones Act") or the General Maritime Law of the United States, or for transportation, unearned wages, maintenance and cure and burial expenses, because of Bodily Injury by Accident or Bodily Injury by Disease, including wrongful death at any time resulting therefrom, sustained by any of your employees arising out of and in the course of their employment by You. . . .

*Id.* Defendants argue that this clause provides coverage only for Inland Salvage's liability for compensatory damages. (Rec. Doc. 106, p. 5). Plaintiff argues that the language of this clause is unclear as to whether Defendants' coverage for maintenance and cure payments is limited to compensatory damages. (Rec. Doc. 110, p. 3). Plaintiff points out that the clause provides payments "for compensatory damages under 46 U.S.C. § 688 (the so-called "Jones Act") or the General Maritime Law of the United States, *or for* transportation, unearned wages, maintenance

7

and cure. . . ." *Id.* Plaintiff argues that this language differentiates coverage for compensatory damages claims under the general maritime law and Jones Act negligence from coverage for other damages owed in relation to items like transportation, wages, and maintenance and cure. Said another way, Plaintiff contends that the wording "compensatory damages" does not apply to claims other than those brought under the Jones Act and general maritime law negligence.

It is well-settled in maritime law that a seaman is allowed to seek punitive damages for his employer's alleged willful and wanton failure to pay maintenance and cure benefits to the seaman. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 424 (2009). Plaintiff's argument starts with the assertion that Defendants' policies cover maintenance and cure payments that Inland Salvage may owe. Plaintiff then contends that the maintenance and cure payments Defendants may owe are not limited to payments for compensatory damages. Rather, Plaintiff asserts that Defendants' duty to pay maintenance and cure benefits extends to any potential punitive damages award resulting from Inland Salvage's failure to pay maintenance and cure. Based on this reasoning, Plaintiff asserts that punitive damages are available for Inland Salvage's failure to pay maintenance and cure because the "compensatory damage" language does not apply to "maintenance and cure" coverage. *Id.* at pp. 3–4.

Defendants, on the other hand, argue that the "compensatory damages" language applies to not only "damages under 46 U.S.C. § 688 (the so-called "Jones Act") or the General Maritime Law of the United States," but also to payments "for transportation, unearned wages, maintenance and cure and burial expenses." (Rec. Doc. 95-1, p. 3). Therefore, Defendants argue they are not obligated to pay any punitive damages for Inland Salvage's failure to pay maintenance and cure because the "Coverage" clause only covers payments for "compensatory damages." (Rec. Doc. 113, pp. 3–4).

The Court interprets the "Coverage" clause to read that the "compensatory damages" language applies only to damages awarded under "46 U.S.C. § 688 (the so-called "Jones Act") or the General Maritime Law of the United States." (Rec. Doc. 95-1, p. 3). The clause is structured in a way to separate "compensatory damages" from damages "for transportation, unearned wages, maintenance and cure and burial expenses." *Id.* Viewing the text of the clause, it is clear "for compensatory damages under 46 U.S.C. § 688 (the so-called "Jones Act") or the General Maritime Law of the United States" is a separate clause from "or for transportation, unearned wages, maintenance and cure and burial expenses." Therefore, the "compensatory damages" language is not applicable to maintenance and cure. However, this result does not ultimately determine that Defendants' agreement to cover maintenance and cure payments includes coverage for punitive damages. Rather, the Court finds that this syntax dispute regarding the "Coverage" clause becomes moot after analyzing the Covernote's "Exclusions" clause.

B. The Covernote's "Exclusion" Clause

In addition to the "Coverage" clause, the Covernote provides an "Exclusions" clause that provides specific categories of damages that Defendants' excluded from coverage. (Rec. Doc. 95-1, p. 4). The "Exclusions" clause states, in relevant part:

> **This insurance does not apply to and there is no coverage under this insurance for either defence or indemnity in respect of:**
> . . .
>
> Your liability for any fines, penalties, punitive damages, exemplary damages, or any additional damages resulting from the multiplication of compensatory damages, however described;

*Id.* Defendants argue that this clause "explicitly excludes coverage for punitive damages, and the wording of the exclusion must be interpreted according to 'the general, ordinary, plain and popular meaning of the words used in the policy.'" (Rec. Doc. 106-1, p. 7) (*citing Ledbetter v. Concord*

*Gen. Corp.*, 95-0809 (La. 1/6/96), 665 So.2d 1166, 1169, *amended by*, 95-0809 (La. 1/6/96), 671 So.2d 915).

In contrast, Plaintiff argues that this exclusionary clause is unclear and vague as to when punitive damages are or are not allowed. (Rec. Doc. 110, p. 5). Plaintiff reads the "Exclusions" clause to provide that Defendants are not responsible for exemplary or punitive damages that result "from the multiplication of compensatory damages." *Id.* at p. 4. Said another way, Plaintiff would have this Court find that the clause only excludes coverage for punitive damages if those punitive damages are awarded as a multiplier of compensatory damages. The Court disagrees.

While the "Coverage" clause may leave room for conflicting interpretations, the Court finds that punitive damages are clearly excluded from coverage under the Covernote's "Exclusions" clause. The phrase "or any additional damages resulting from the multiplication of compensatory damages" excludes coverage for compensatory damages that are multiplied by some amount—such as when the law provides for treble damages. Rather than providing that the policy excludes compensatory damages that are doubled or trebled, the clause uses broader language by excluding "any additional damages resulting from the multiplication of compensatory damages." On the other hand, punitive damages are not defined by how they are calculated, but rather are defined by why they are imposed. The "Exclusions" clause clearly excludes coverage of any punitive damages for which Inland Salvage may be liable and separately excludes coverage for any heightened damages that are the result of the multiplication of compensatory damages.

The Court finds that this scenario fits squarely within the confines of Louisiana Civil Code article 2046—"[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. The wording of the "Exclusions" clause is not unclear and vague as Plaintiff has

argued. Rather, and in accordance with the law, this Court is bound to give legal effect to the clear and unambiguous language of Defendants' insurance policies. Thus, the Court agrees with Defendants' argument. Punitive damages are excluded from coverage under the Covernote, and in turn, the Chubb Slip.

    C.  Plaintiff's Direct-Liability Punitive Damages Argument

Plaintiff presents a final argument for why his punitive damages claims against Defendants should not be dismissed. This argument seeks to have Defendants found directly liable for punitive damages based on the Defendants' own failure to pay maintenance and cure benefits to Plaintiff.

According to Plaintiff, Inland Salvage has been deemed bankrupt by the United States District Court for the Southern District of Alabama, and has no assets of its own. (Rec. Doc. 110, p. 5). Because Inland Salvage has been unable to pay maintenance and cure benefits due to bankruptcy, Plaintiff contends that the obligation to pay for maintenance and cure transferred to Defendants. This argument further reasons that because Defendants have refused to pay maintenance and cure benefits, Defendants are directly liable for their own "willful and arbitrary failure to pay maintenance and cure." *Id.* Plaintiff deems the Defendants to have essentially "stepped into the shoes of [Inland Salvage]." *Id.* at p. 6.

Plaintiff presents the Court with hypotheticals and arguments seeking to show why dismissing his claims for punitive damages would be unfair. However, Plaintiff has presented no case law nor any source of authority to support his position. The Court finds that Plaintiff's argument, which depends on the practical effects of dismissing the punitive damages claims, is without merit.

The "Conditions" clause of the Covernote clearly states that Defendants agree "to pay all sums which [Inland Salvage] become[s] legally obligated to pay, as employer. . . ." (Rec. Doc.

11

95-1, p. 3). The Court agrees with Defendants in finding that this language does not transfer any obligation of Inland Salvage to pay maintenance and cure. Rather, the obligation to provide maintenance and cure remains with Inland Salvage. Defendants contracted with Inland Salvage to cover the payments of maintenance and cure, which Inland Salvage may have the obligation to pay. Defendants are correct in noting that the duty to provide maintenance and cure remains with the employer, Inland Salvage.

Again, this is a situation where the Court need look no further than the language of the Covernote. The policy provides that Defendants agree to pay sums that Inland Salvage becomes legally obligated to pay with certain exclusions and limits provided for in the agreement. Plaintiff is permitted by law to bring this action directly against Inland Salvage's insurers—in this case, the Defendants. La. R.S. § 22:1269. However, an action against an insurer when the insured is insolvent or bankrupt can only be maintained against the insurer within the confines of the policy. The relevant text of Louisiana's Direct Action Statute states, "[t]he injured person . . . shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone. . . ." La. R.S. § 22:1269(B). This statute does not provide for the automatic assumption of maintenance and cure obligations by the insurer when the insured is deemed insolvent and/or bankrupt. Nor does the Covernote provide for the transfer of that obligation. Rather, Defendants are obligated to pay the sums due by Inland Salvage to Plaintiff in relation to maintenance and cure benefits—excluding punitive damages. Such is clear from the language of the Covernote.

IV. **Conclusion**

Defendants have mounted a successful bid to dismiss Plaintiff's punitive damages claims. As stated previously, Defendant Chubb Syndicate 1882's excess coverage policy adopts the

language from Defendant Hiscox's primary coverage policy. Therefore, the analysis of the Covernote is applicable to both the Covernote and the Chubb Slipp. As a result, both policies exclude coverage for punitive damages.

While the Covernote's "Coverage" clause leaves room for reasonable minds to differ in their interpretation, the Covernote's "Exclusions" clause clearly and unambiguously excludes coverage for punitive damages. Plaintiff's final argument—contending that Defendants are directly liable for punitive damages for their own failure to pay maintenance and cure—is without merit. Nothing in the law nor the Covernote transfers the obligation to provide ongoing maintenance and cure payments from Inland Salvage to Defendants. The Covernote does agree to provide maintenance and cure payments that Inland Salvage may be found legally obligated to pay Plaintiff. Thus, if a jury would find that Inland Salvage withheld maintenance and cure payments from Plaintiff, then Defendants would be contractually obligated under their respective policies to provide those payments. However, Defendants expressly excluded coverage of any punitive damages assessed against Inland Salvage. Such is the law between the parties; and, this Court is bound to enforce that law.

For the foregoing reasons, the Court **GRANTS** the motion and dismisses Plaintiff's claims for punitive damages against Defendants Hiscox and Chubb Syndicate 1882.

Accordingly;

IT IS ORDERED that Defendants' **Motion for Partial Summary Judgment Regarding Punitive Damages** is **GRANTED**. Plaintiff's claims against Defendants Hiscox Dedicated Corporate Member Limited and Catlin Syndicate Limited Subscribing to Covernote NO4MM-34-1049-03 and Chubb Syndicate 1882 for punitive damages are **DISMISSED WITH PREJUDICE.**

December 19, 2017

                                                      JAY C. ZAINEY
                                      UNITED STATES DISTRICT JUDGE